## The Home Mutual Building Association of Baltimore City vs. Robert A. Thursby.

*Mutual Building Association—Bonus or assessment—Excessive interest—Statement of claim—Ascertainment of excess of Interest.*

In August, 1876, T. became a member of the Home Mutual Building Association, chartered in August, 1874, under the Act of 1868, ch. 471, and subscribed for twenty-five shares of its stock, and obtained a loan from the Association. In May, 1877, T. subscribed for twenty-five additional shares, and obtained a further loan. To secure these loans, two mortgages were executed by T. The Association was authorized by sec. 86 of the Act of 1868, to require T. at the time of subscribing for stock, " to pay such bonus or assessment as might be fixed or assessed, in such manner as might be provided by the corporation, in order to place such new member on a footing with the original members, and others holding stock at that time." The bonus or assessment required to be paid by T. was for back dues—an amount equal to the weekly dues of twenty-five cents per share, counting from the time the Association was organized, to the time of his subscription. The bonus so required instead of being paid in cash, was by consent of T. deducted from the amounts loaned or advanced to him. Held :

That the requirement by the Association of the bonus or assessment of T. was just and reasonable, and such as is contemplated and authorized by the statute, as it placed him " on a footing with the original members and other stockholders."

The interest which T. agreed to pay exceeded six per cent. per annum on the sums advanced, which the statute did not authorize the Association to receive. On a petition filed by the Association to obtain a decree for the sale of the mortgaged premises, it was Held :

That in determining the amount due the Association by T., he was entitled to be credited with all the sums paid by him for interest in excess of six per cent. per annum.

In the " statement of claim," filed with the petition of the Association, seeking to procure a sale of the mortgaged premises, T. was

charged with the amounts of the loans; and from these were discounted certain back dues as a bonus or assessment. T. was credited with the weekly payments, extending from the 22nd of August, 1876, to 23rd March, 1880, as also with his share of the profits up to the time the balance was taken, at the rate of six dollars per share, on his fifty shares. No credit, however, was allowed T. for excessive interest paid by him. The balance claimed to be due the Association was $2007.50. HELD:

1st. That the "statement of claim" made by the Association was correct, except in its failure to give T. credit for excessive interest paid by him.

2nd. That the excess of interest was to be ascertained by calculating the interest upon the two sums of $2500,—the amounts advanced— at the rate of six per cent. per annum; and deducting the sums thus ascertained from the amounts paid for and on account of interest.

APPEAL from the Circuit Court of Baltimore City.

The appellee being desirous to have the property which he had mortgaged, released, applied to the appellant for that purpose, and offered to pay it the balance due on the mortgages, and tendered in payment thereof the sum of fifteen hundred dollars, which was refused. After this refusal the appellant filed its petition to procure a decree for the sale of the mortgaged premises. The appellee thereupon filed his petition setting forth his readiness and willingness to pay whatever might be found to be due to the appellant; and averring that the appellant had not complied with the provisions of Article 26 of the Code, as amended by the Act of 1868, and was not authorized to exact from him more than the payment of the loans with legal interest. The appellee prayed for an account, which was ordered. The auditor's report and account showed a balance of $1500.10 as due by the appellee. To this report sundry exceptions were filed by the Association, The report and account of the auditor were finally ratified and confirmed. From the order of ratification this appeal was taken. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*F. H. Hack,* and *A. R. Hack,* for the appellant.

*J. J. Wade,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

The questions presented by this appeal arise upon the exceptions of the appellant to the auditor's report, which was ratified and confirmed by the Circuit Court.

The account stated by the auditor is not in the record, but in lieu thereof is the written agreement of counsel, from which it appears that the account shows a balance of $1500. to be due the Association from the appellee, on the 23rd day of March 1880, when his last payment was made. It further appears that the auditor ascertained that balance "by deducting the full amount of each weekly payment, from August 22nd 1876 to about April 8th 1879, from the amounts advanced, and adding interest on the weekly balances at the rate of *six per cent. per annum,* and thus at the end of each week finding the balance due; and that from April 8th 1879 to March 23rd 1880, the auditor deducted the amounts paid *every four weeks,* and added the interest for 28 days instead of 7 days, bringing thus a balance of $1500,10.

In a supplementary statement of the auditor, he says, "that in the calculation of the interest on this debt of defendant, if the weekly payments had been applied weekly, and the interest calculated weekly throughout the statement, as was done in a large part of it, the result would show an indebtedness by defendant to complainant of something less than $1500, say 20 or 30 cents less," &c.

The question presented by the exceptions is whether the auditor's account was stated upon correct principles.

The appellant is a Mutual Building Association chartered in August 1874, under the Act of 1868, ch. 471.

The appellee became a member in August 1876, and subscribed for 25 *shares* of its stock. In May 1877, he subscribed for 25 additional shares. The Association was authorized by *sec.* 86 *of the Act of* 1868, to require the appellee at the time of subscribing for stock "to pay such bonus or assessment as might be fixed or assessed, in such manner as might be provided by the corporation, in order to place such new members on a footing with the original members, and others holding stock at that time."

In this case the bonus or assessment required to be paid by the appellee was for *"back dues;"* that is an amount equal to the weekly dues of 25 cents per share, counting from the time the Association was organized, to the time of his subscription.

This was a just and reasonable requirement, and such as is contemplated and authorized by the statute, as it placed the appellee "on a footing with the original members and other stockholders." The amount required, instead of being paid in cash, was by the consent of the appellee, deducted from the amounts loaned or advanced to him.

After the loans to him, or as it is denominated, after the redemption of his shares, he continued to enjoy the same rights and privileges as other members holding unredeemed shares, and was entitled to participate equally with them in the benefits of the Association; because by the accumulation of profits, or the successful working of the Association, the time during which his payments were to be continued would be shortened.

Under his contract, such payments were to continue until the society should have in its treasury, clear of losses, a sufficient amount to pay each unredeemed share $125, when the appellee's contract would end, and the corporation be dissolved. Both in the Constitution of the society, and in the contracts of the appellee, the facts are similar to those which existed in *Robertson's Case,* 10 *Md.,* 397. Except that the interest which the appellee agreed

to pay exceed *six per cent. per annum* on the sums advanced, which the statute did not authorize the appellant to receive. The consequences of the exaction of excessive interest will be stated hereafter.

In our opinion the principles upon which the auditor's account was stated are erroneous.

The appellant Association is not insolvent, nor has it ceased active operation, therefore, the cases of *Windsor & Applegarth vs. Bandel,* 40 *Md.,* 172, and of *The Low Street Building Association,* 48 *Md.,* 448, and of *The Peters' Building Association,* 51 *Md.,* 198, have no application.

Nor does the present case come within the decision of *Taylor's Case,* 41 *Md.,* 409. There the Association was one of a different kind, having none of the elements or qualities of a Mutual Building Association, such as was authorized by the *Act of* 1852, *ch.* 148, and by the provisions of the Act of 1868—relating to such associations.

With respect to the exaction of excessive interest, and its effect upon the rights of the parties we refer to *The Border State Perpetual Building Association vs. Mc-Carthy,* 57 *Md.,* 555, in which it was held that the mortgagor was entitled to be credited with all the sums paid by him for interest in excess of six per cent. per annum. In that case, for the purpose of ascertaining the amount due, the mortgagee claimed to apply the rule established in *Robertson's Case,* 10 *Md.,* 397, and it was determined that the rule was applicable, and that the account ought to be stated in accordance therewith. A similar decision was made in *McKaig vs. The Home Building Association, Recorded in Liber S. C. J., No.* 1, *folio* 265, *of "Opinions Unreported."*

If that rule were applied to the present case, and we were to assume as a basis of calculation that it would require 96 weeks from March 29th 1880, for the Association to accumulate funds sufficient to pay each unre-

deemed share, $125, as stated in the testimony of the book-keeper, the result would be less favorable to the appellee than is reached by stating the account on the principle contended for by the appellant, as shown by the "*statement of claim*" filed with the petition. That statement was made in accordance with *Article XIV* of the Constitution of the appellant, which provides that "any member having obtained a loan may procure a release of the mortgaged premises in the following manner: He shall pay back the balance due the said Association and his share of losses if any. Also he shall pay for each and every share so released, in the first year $3, in the second year $3, and $2 in the third and fourth years; *but nothing thereafter*, as a release fee. He then ceases to be a member of the Association."

The appellee standing on the footing of an original member, is entitled to count from the beginning of the society, and more than four years having elapsed, he was not bound to pay any "release fee." There is no satisfactory evidence in the record showing how much, if anything, was payable on account of losses. In the "statement of claim" filed by the appellant, there is no claim on account of losses. According to our construction of the Article above cited, the "statement of claim" made by the appellant is correct, except that no credit is therein allowed to the appellee for excessive interest paid by him.

That statement shows an aggregate balance due the Association on both mortgages upon the 23rd day of March 1880, the date of his last payment, to be $2007.50.

If the excess of interest paid by the appellee be deducted therefrom, it will show the actual amount due and payable by the appellee for the satisfaction of the two mortgages. This excess of interest is to be ascertained by calculating the interest upon the two sums of $2500 each, which were the amounts advanced, at the

rate of *six per cent. per annum;* and deducting the sums thus ascertained from the amounts paid for and on account of interest.

The order ratifying the auditor's report will be reversed and the cause remanded, to the end that an account may be stated in accordance with the views expressed in this opinion.

The order of the Circuit Court in so far as it required the complainant below (now appellant) to pay such costs as had accrued in that Court after the 13th day of April 1880, will also be reversed, and it will be ordered that the costs in that Court be paid by the appellee. We think it equitable that each party shall pay his own, or its own costs on this appeal and it will be so ordered.

*Reversed and remanded.*